Filed 8/29/22  P. v. Starling CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>ROBERT STARLING,<br><br>    Defendant and Appellant. | A164375<br><br>(Sonoma County<br>Super. Ct. No. SCR 5681391) |

Defendant Robert Starling appeals an order denying his petition for resentencing under Penal Code section 1170.91.[1] We find no error and accordingly, we shall affirm.

## Background

In April 2010, defendant was found guilty of four robberies (§ 211); two counts of conspiracy to commit robbery (§ 182, subd. (a)(1)); two counts of making false reports to police (§ 148.5, subd. (a)); one count of unlawfully wearing a mask (§ 185); and one count of intimidating a witness (§ 136.1, subd. (a)(1)). The jury also found true the allegation that defendant personally used a firearm during the commission of the robberies, within the meaning of section 12022.53, subdivision (b), and that he was armed with a firearm during the conspiracies, within the meaning of section 12022,

---

[1] All statutory references are to the Penal Code unless otherwise noted.

subdivision (a)(1). (*People v. Starling* (A129084, July 7, 2011) [non.pub. opn.].)

The evidence at trial established that between September 2007 and May 2009, defendant, who had previously worked for an armored truck company, robbed four armored truck guards and conspired to rob other armored truck guards. According to the California Department of Corrections and Rehabilitations (C.D.C.R.), "During these robberies, Starling approached the guards as they were transporting bags of cash from the businesses back to the armored trucks, and ordered them to the ground at gunpoint. Starling would take the bags of cash and flee the scene. He and his co-defendant conducted surveillance on other locations with the intent on robbing the transport guards." Defendant was sentenced to a total term of 30 years four months in prison.[2]

On August 25, 2021, defendant filed a petition for resentencing under section 1170.91. In conjunction with his section 1170.91 petition, defendant submitted documentation showing that he had been in the United States Army for about six years and that he suffers from post traumatic stress disorder (PTSD), which is "more likely than not . . . related to his reported trauma event experienced in Korea." A hearing was scheduled and counsel was appointed for defendant.

At the hearing, defendant testified that he served in the United States Army from December 28, 1993 through January 26, 2000. From April 1998 through April 1999, he was stationed in South Korea. In South Korea, defendant was stationed "up on the border" with North Korea. "[I]t was a

---

[2] In February 2019, the court received but declined to act on a letter from the C.D.C.R. recommending resentencing under section 1170, subdivision (d).

2

very intense hostile place." He "developed serious difficulty sleeping" which necessitated "taking a great deal of medication to try to go to sleep." He also suffered from "regular depression" and anxiety while in Korea. He testified that, prior to his service in South Korea, he had not suffered from any untreated, undiagnosed mental health issues. Since his service, defendant has continued to struggle with depression and anxiety. He also testified about his divorces, post-military service employment difficulties, and his imprisonment and how those problems affected him. Defendant has been prescribed antidepressants since being in prison. Defendant attributed his current PTSD symptoms to his military service.

The trial court denied the petition, finding that while defendant had established eligibility for recall by showing that he may have a current qualifying condition that may be the result of military service, he was not suitable for resentencing. The court found that the link between defendant's current PTSD symptoms and his military service was tenuous, as was "[a]ny causal connection between any military related PTSD *and the commitment offenses*." The court noted the following additional factors that weighed against resentencing: Defendant's offenses were committed over two years and showed a high degree of planning and sophistication. They were serious, violent, and placed numerous innocent persons in danger. Defendant tried to convince others to join his criminal enterprise and then threatened those individuals to stay quiet. Defendant did not take responsibility for his conduct at trial and falsely testified under oath. Defendant is a dangerous person capable of inflicting great bodily injury or death on individuals. Defendant exhibited no credible remorse. He took advantage of his former police training and took advantage of his training in armored car deliveries to commit the offenses. Defendant breached the trust of his former coworkers.

3

Defendant timely filed a notice of appeal.

## Discussion

In 2014, the Legislature enacted former section 1170.91 (now identified as section 1170.91, subdivision (a)) (Stats. 2014, ch. 163, § 2), "which mandate[s] consideration of trauma resulting from military service as a mitigating factor when a court exercises determinate sentencing triad discretion. " (*People v. Brooks* (2020) 58 Cal.App.5th 1099, 1103–1104.)

In 2018, the Legislature amended section 1170.91 (Stats. 2018, ch. 523, § 1) "to add a retroactivity clause and a procedure for resentencing." (*Brooks, supra,* 58 Cal.App.5th at p. 1104.) As relevant here, section 1170.91, subdivision (b) "allows a person currently serving a prison sentence for a felony conviction, 'whether by trial or plea,' to petition for a recall of his sentence provided he meets the following initial requirements: (1) he is or was a member of the United States military, and (2) he 'may be suffering from . . . post-traumatic stress disorder, . . . as a result of [such] military service.' " (*Brooks, supra,* at p. 1104.)

"A section 1170.91, subdivision (b) petitioner must allege: '(A) [t]he circumstance of suffering from . . . post-traumatic stress disorder . . . as a result of the person's military service was not considered as a factor in mitigation at the time of sentencing,' and '(B) [t]he person was sentenced prior to January 1, 2015.' [Citation.] Provided that the petition so alleges, the sentencing judge or in his or her absence an assigned judge of the sentencing court 'shall determine, at a public hearing' held upon proper notice, whether the petitioner satisfies the requisite criteria." (*Brooks, supra,* 58 Cal.App.5th at p. 1104, citing § 1170.91, subd. (b).) If those criteria are met, the petitioner may be resentenced, in the court's discretion, with trauma resulting from military service taken into account as a mitigating factor. (*Ibid*.)

4

*A. Judicial Bias*

At defendant's 2010 sentencing hearing on his robbery convictions, the trial court stated that it found defendant's trial testimony "incredulous," described defendant as "manipulative and narcissistic" and noted that defendant's credibility "has been totally destroyed with the court." Eleven years later, the same judge presided over defendant's section 1170.91 hearing and ultimately denied the petition, finding that the aggravating factors pertaining to the offenses justified the sentence imposed.

Defendant contends the order denying his petition must be reversed because the trial court improperly prejudged his credibility. The Attorney General contends that defendant forfeited his judicial bias claim by failing to raise it in the trial court and that, in any event, his claim lacks merit.

We agree that the claim has been forfeited. Defendant concedes that he failed to allege judicial bias in the superior court. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1320 ["As a general rule, a specific and timely objection to judicial misconduct is required to preserve the claim for appellate review."].) Defendant was aware of the court's prior credibility findings, having addressed them directly in a letter to the court in 2019.[3] He had an obligation to raise any concerns he had regarding bias at the "earliest practicable opportunity." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111, overruled on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151.) Defendant's allegation that the bias in this case was so grossly unfair as to amount to a violation of due process does not relieve him of the obligation to raise the claim in the superior court. (*People v. Samuels* (2005) 36 Cal.4th 96, 114

---

[3] In the 2019 letter, defendant acknowledges, "I lied during my testimony" and states, "I understand that I destroyed my credibility with you and the court. The memory of you calling my testimony 'incredulous' at my sentencing hearing has always stayed with me."

["Failure to raise the issue of judicial conduct at trial waives claims of statutory or constitutional error."].)

In any event, as the Attorney General notes, there is no evidence of likely bias, let alone "extreme" bias as defendant suggests. A defendant who alleges his due process rights were violated by alleged judicial bias does not need to prove actual bias, but must prove (under an objective standard) that the probability of bias on the part of the judge is so great that it is "constitutionally intolerable." (*People v. Freeman* (2010) 47 Cal.4th 993, 1001.) "Mere expressions of opinion, based on observation of the witnesses and evidence, do not demonstrate judicial bias." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589, 591 ["The trial court's credibility determinations did not show bias."].) The trial court's statement regarding defendant's lack of credibility was a reasonable assessment of defendant's testimony at trial and was confirmed by defendant's subsequent admission that he lied during his trial testimony. Moreover, as is typical at most resentencing hearings, section 1170.91, subdivision (b)(2) expressly directs that the sentencing judge determine the petition if available. (See *Peracchi v. Superior Court*. (2003) 30 Cal.4th 1245, 1254 ["Because of the significance of the trial record and the court's observations at trial, the usual procedure is for the person who served as the trial judge to preside at the sentencing hearing, and this procedure generally is followed in the situation where resentencing is to occur following remand."].) "The trial court is considered to be in the best position to conduct the resentencing hearing. The preference for a judge who is well informed about the case serves the interests of both parties, and an alternative practice would impose heavy burdens on scarce judicial resources." (*Ibid*.) Nothing in the record suggests the court was

unwilling or unable to properly weigh defendant's credibility at the time of the hearing on his resentencing petition.

### B. Abuse of Discretion

Defendant contends the trial court abused its discretion in denying his petition for resentencing. He argues that (1) the trial court's finding that the links between defendant's PTSD and his military service is tenuous is not supported by the evidence; (2) the court improperly required that there be a "causal connection" between the PTSD and the commitment offenses; (3) the court improperly relied on the fact that he did not mention his PTSD or his mental health to the probation officer in connection with the original sentencing; (4) the trial court's finding that he exhibited no credible remorse for his conduct is not supported by the record; (5) the trial court failed to consider post-sentencing mitigating factors demonstrating his rehabilitation; and (6) the sentence imposed remains excessive given the above mitigating factors. We disagree.

Contrary to defendant's argument, the court did not require that defendant establish a causal connection between defendant's PTSD and the commitment offenses. To the contrary, the court's order expressly acknowledges that section 1170.91 "does not require a showing that petitioner actually had a qualifying condition *at the time the commitment offense* was committed or that the qualifying condition had any *causal connection* to the commitment offense. Instead, petitioner's only burden is to demonstrate that he *may* currently have a qualifying condition and that the qualifying condition *may be the result of* petitioner's military service." Consistent with the above, the court acknowledged that defendant's PTSD may be military related. The court concluded, however, that "the role that [defendant's] military service plays in his current PTSD (and his PTSD

7

symptoms) is minor compared to other stressors that petitioner has experienced after leaving the military, such as failed marriages, employment difficulties, financial difficulties, and adapting to prison life (particularly as a former law enforcement officer)." We understand the court to have reasoned that to the extent that defendant was currently suffering from military-related PTSD, that factor in mitigation was not particularly significant as compared to his anxiety and depression caused by other stressors. The court's characterization of the connection between defendant's current PTSD symptoms and his military service as tenuous is consistent with the results of the clinical examination performed by the Department of Veterans Affairs which reads, "Based on review of records, results from the CAPS-5, and clinical interview, veteran meets full criteria for a diagnosis of PTSD that more likely than not is related to his reported trauma event experienced in Korea. It appears that prior to his last failed marriage and financial hardship, there were stressors related to his work environment that may have likely aggravated his pre-existing avoidant behaviors that following military services was minimal as evidenced by his ability to perform at his job tasks and continue to maintain and/or increase rank."

The court's consideration of the absence of a "causal connection" between defendant's PTSD and the commitment offenses and his failure to raise his mental health issues at his sentencing hearing in 2010 was not an abuse of discretion. "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) How defendant's PTSD impacted his commission of the offenses, if at all, is a relevant factor and properly

8

considered by the court. To the extent the court considered defendant's failure to raise "any mental health issue to the probation officer during the 2010 presentence interview," it did so in support of its conclusion that defendant "did not believe that mental health issues played any significant role in the reason petitioner committed the offenses between 2007 and 2009." The court did not, as defendant suggests, independently rely on "on the fact that appellant did not mention his PTSD or his mental health to the probation officer in connection with the original sentencing *as a reason for denying the petition*." (Italics added.)

Contrary to defendant's argument, the court did not fail to consider defendant's post-sentencing statement of contrition and his purported "great strides in rehabilitation and in becoming a productive member of society." In support of his argument, defendant cites the letter and evaluation report submitted in 2019 by the C.D.C.R. recommending resentencing under section 1170, subdivision (d). The report indicates that defendant has had no disciplinary actions filed against him while in custody and lists his participation in several self-help activities. The report also includes defendant's letter to the court, in which he states that he is "ashamed" of his past actions and his failure to take responsibility for the crimes he committed. The court directly addressed the C.D.C.R.'s letter and related evidence in the order denying the section 1170.91 petition: "The court notes that the C.D.C.R. previously recommended a . . . section 1170(d) recall. However, this court does not believe that recommendation necessarily weighs in favor of a . . . section 1170.91 recall since the C.D.C.R. has its own motivations and reasons for recommending a . . . section 1170(d) recall. Furthermore, this court declined to recall the sentence upon the C.D.C.R.'s recall recommendation." Although the court did not expressly so state, the

9

reasonable conclusion drawn from the court's order is that the court determined that defendant's post-sentence progress did not outweigh the aggravating factors identified by the court.

Finally, in reviewing the denial of a section 1170.91 petition, this court has no occasion to consider whether the previously imposed sentence is excessive.

## Disposition

The order denying the petition for resentencing under Penal Code section 1170.91 is affirmed.


POLLAK, P. J.

WE CONCUR:

BROWN, J.
GOLDMAN, J.